# UNITED STATES DISTRICT COURT
## for the
### District of Columbia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )      Case No. 26-SW-175
ONE PERSON UNDER RULE 41 )
)
)
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A (incorporated by reference)

Located within the jurisdiction of the District of Columbia, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|

of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), and Firearm Trafficking, in violation of 18 U.S.C. § 933, Assault with a Dangerous Weapon, in violation of 22 D.C. Code § 402, Possession of a Firearm During a Crime of Violence, in violation of 22 D.C. Code § 4504(b), and Possession with Intent to Distribute Marijuana while Armed, in violation of 48 D.C. Code § 904.01, 22 D.C. Code § 4502.

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Najla Muhammad, Detective
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone _____ *(specify reliable electronic means).*

Date: ___6/4/2026___

_____
*Judge's signature*

City and state:  Washington, D.C.          G. Michael Harvey
                                    (United States Magistrate Judge)

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>ONE PERSON UNDER RULE 41 | )<br>)<br>)<br>)     Case No.  26-SW-175<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located within the jurisdiction of the District of Columbia.
*(identify the person or describe the property to be searched and give its location)*:

See Attachment  A (incorporated by reference).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment  B (incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before _____ June 18, 2026 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ G. Michael Harvey _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____ 6/4/2026 _____

_____
*Judge's signature*

City and state:    _____ Washington, D.C. _____

G. Michael Harvey
United States Magistrate Judge

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br><br>26-SW-175 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

*Person to be Searched*

The person to be searched is Tony Eugene Morgan, DOB  1993, FBI#



**ATTACHMENT B**

*Property to be seized from person of Tony Eugene Morgan*

All items constituting evidence, fruits, and/or instrumentalities of violations of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) (hereinafter, the "SUBJECT OFFENSE"), by Tony Eugene Morgan, as described in the search warrant affidavit, including, but not limited to, the following:

a. A sample of the deoxyribonucleic acid ("DNA") of the person identified in Attachment A-1 to be collected via buccal or oral swab in accordance with established procedures, and to be analyzed forensically in accordance with the applicable, valid established procedures.

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF ONE PERSON UNDER RULE 41** | **Case No. 26-SW-175** |

## AFFIDAVIT IN SUPPORT OF APPLICATION UNDER RULE 41 FOR WARRANT TO SEARCH AND SEIZE

I, Najla Muhammad, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing a search of a sample of the deoxyribonucleic acid ("DNA") from Tony Eugene Morgan ("MORGAN") to be collected via buccal or oral swab in accordance with established procedures, and to be analyzed forensically in accordance with the applicable, valid established procedures.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I have been in this position since September 2024.  I am presently assigned to the Washington D.C Field Office as a member of the Violent Crime Group. Prior to joining the Violent Crime Group I was a member of the Washington Field Division's HIDTA Task Force for a year. As a member of the HIDTA Task Force, I was frequently involved in criminal violations involving narcotics and firearms. To hold this position, I have completed six months of training at the Federal Law Enforcement Training Facility in Glynco, Georgia. As an honor graduate of both the Criminal Investigator Training Program, and the ATF Special Agent Basic Training I received formalized instruction in, among other things, drugs, firearms, violent crime investigations, drug identification and detection, interdiction, familiarization with United States drug and firearms laws, financial investigations and money laundering, identification and seizure of drug and

3

firearms trafficking related assets, and physical and electronic surveillance.  Through training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the organization of drug conspiracies, and the intersection between narcotics distribution and the use or possession of firearms.

3.      As an ATF Special Agent, I have participated in federal investigations involving the distribution of controlled substances and the unlawful possession of firearms. I have participated in the following investigative techniques: interviewing informants, conducting physical surveillance, and executing search warrants that have led to seizures of narcotics and firearms. I have also supported local law enforcement agencies in their narcotics and firearms investigations, and investigations into violent street crews.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all my knowledge, or the knowledge of others, about this matter.

5.      As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States.

6.      Through my training and employment, I am also familiar with the fact that each person has a unique DNA composition. DNA isolated from blood, hair, skin cells, or other genetic evidence left at the scene of a crime or left on evidence of a crime can be compared with the DNA of an individual to identify an individual as a potential suspect, or exclude an individual as a potential suspect.

7.      I base the facts set forth in this affidavit upon my personal knowledge, information obtained during my participation in this investigation, review of documents to include business and bank records and official government records, knowledge obtained from other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein.

8.      Because this affidavit is being submitted for the limited purpose of search warrant for a buccal swab of MORGAN, I have not set forth every fact learned during this investigation. I make this affidavit based, in part, on my personal knowledge and observations derived from my participation in this investigation, information provided by other law enforcement officers, reports and data provided by other officers, which I have read and reviewed, and, in part, upon information and belief.

9.      On the basis of this familiarity, and on the basis of other information your affiant has reviewed and determine to be reliable, I allege the facts to show there is probable cause to believe that evidence of violations of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) (hereinafter, the "SUBJECT OFFENSE"), will be found located in the cheek/saliva (buccal swab[1]) of MORGAN.

---

[1] As the Supreme Court has recognized, a "buccal swab" is a "common procedure" that involves "wiping a small piece of filter paper or a cotton swab similar to a Q-tip against the inside cheek of an individual's mouth to collect some skin cells." *Maryland v. King*, 133 S. Ct. 1958, 1967-68 (2013). This procedure is "quick and painless" and poses "no threat to the health or safety" of a defendant. *Id*. at 1968.

**PROBABLE CAUSE**

10.     This investigation focuses on two occasions on which MORGAN, who is prohibited by federal law from possession firearms due to a prior felony conviction, is believed to have possessed firearms. First, on July 12, 2025, CCTV from a convenience store located at 4133 Wheeler Road Southeast, Washington, D.C. 20032, showed an individual believed to be MORGAN discarding a firearm in a freezer shortly before law enforcement entered the store. Subsequently, on December 28, 2025, during a traffic stop at the intersection of Martin Luther King Jr. Avenue Southeast and South Capitol Street Southeast, Washington, D.C., of a vehicle occupied by MORGAN and Ronae Ashley Simmons ("SIMMONS"), officers heard a metallic clink as MORGAN exited and found a firearm on the ground under the door vehicle door that MORGAN had used.

Firearm Possession on July 12, 2025

11.     On Saturday, July 12, 2025, members of the Metropolitan Police Department's Seventh District's Special Missions Unit (SMU) were working their assigned tour of duty while wearing full police uniform. At approximately 5:03 p.m., MPD members pulled into the parking lot of the convenience store located at 4133 Wheeler Road Southeast, Washington, D.C. 20032. MPD officers observed a tall black male wearing a blue shirt outside of the convenience store (hereinafter "Individual-1"). According to the MPD officers, Individual-1 quickly walked into the store after he appeared to notice the presence of police in front of the store. He then walked out of the store approximately 10-15 seconds later, as the MPD officers walked in to conduct a business check at the convenience store.

12.     Because the MPD officers had previous experiences recovering firearms in similar instances, after individuals quickly entered stores or buildings upon seeing law enforcement and

6

then immediately walked back out after discarding the firearm, the officers began canvassing the inside of the store for a possible weapon.

13.    MPD Officer Zambrano-Mora asked one of the employees of the store if Individual-1 had discarded anything while inside of the store. The employee responded that he was in the back of the store and did not observe anything but allowed Officer Zambrano-Mora to review CCTV footage from the store's security cameras.

14.    While reviewing CCTV footage, MPD officers observed Individual-1 entering the store, turning right toward the coffee machines in the store, bending his left arm, and reaching/manipulating his left pants pocket before he exited the frame and continued walking toward the coffee area.

15.    Officer Zambrano-Mora canvassed the coffee machine area, which also has a large freezer containing a variety of frozen products. While checking the freezer, Officer Zambrano-Mora recovered a firearm from the middle of the lower shelf of the freezer, behind a bag of frozen food. The firearm was a black Glock 33 bearing serial number BWEM918 with an attached 22 round capacity magazine which was loaded with 21 rounds of ammunition. The firearm appeared to be fully functional, able to be fired with one hand, had a barrel length less than 12 inches, and capable of expelling a projectile by means of explosion. MPD officers later noticed that when the slide of the firearm was locked to the rear, an alteration could be observed at the rear of the slide. This alteration was where the firing pin is located and is consistent with an "auto-sear" device, which is designed to convert a traditional handgun into a fully automatic handgun or machine gun, giving the shooter the ability to expel multiple rounds of ammunition with a single pull of the trigger.



*The location of the discovered firearm*

16.    Officer Zambrano-Mora then reviewed additional CCTV footage from the coffee machine and freezer area. This footage showed that, in fact, a different individual (later identified as MORGAN), walked to the coffee and freezer area, reached into his crotch area as he approached the freezer, retrieved a black object from his crotch area, and bent down, extending his arm into the middle of the lower shelf of the freezer, the same area where the firearm was located and recovered minutes later.[2] Specifically, the CCTV showed that MORGAN was a black male, medium to heavy set, wearing a white tank top, dark-colored shorts with black leggings underneath, and black shoes with white soles. He also had black dreadlocks in his hair that appeared to almost reach his waist. Although a firearm was not fully visible on the CCTV footage,

---

[2] Individual-1 was initially stopped by MPD officers based on their initial observations, but was released after the CCTV revealed that the firearm appears to have actually been discarded by MORGAN instead of Individual-1.

according to MPD officers, MORGAN's movement was consistent with grabbing the firearm by the extended magazine when he pulled it from his crotch/groin area and placed it in the freezer.



*MORGAN reaching into the freezer where the firearm was discovered*

17.    By the time MPD officers reviewed the CCTV and discovered that the firearm was discarded by MORGAN, he had already left the scene. A subsequent review of the MPD officers' body-worn camera ("BWC") footage revealed that at least one officer had captured a clear view of MORGAN while he was still inside of the store, moments after he was seen on CCTV discarding the firearm in the freezer. A screenshot from the BWC which showed MORGAN facing Officer Killoran and appeared to show tattoos on MORGAN's left arm, a tattoo on the front of his neck with the letters "BMF" with a half-moon over the letter "F," and a scar or mark across his right eyebrow.

18.    In addition, MPD officers obtained an image from a street camera located around the corner from the convenience store. The image depicts an individual resembling MORGAN running on the 900 block of Wahler Place Southeast, away from the convenience store. The timestamp from the screenshot reflects 5:07 p.m. on July 12, 2025, which is minutes after MPD members began canvassing the convenience store to see if a weapon had been discarded inside.

9



*MORGAN running on the 900 block of Wahler Place Southeast*

19.     MPD identified the individual as MORGAN because he is known to have a tattoo on the front of his neck with the letters "BMF" as well as a half-moon over the letter "F." These tattoos can be observed in booking photos from Tony Morgan's previous arrests on MPD's Records Management System (RMS).



10

***Comparison of the tattoos of MORGAN from officer BWC at the convenience store (right) to MORGAN's previous booking photograph (left)***

20.     Additionally, booking photos from MORGAN's previous arrests on RMS show a clear scar or mark on his skin which runs across his right eyebrow.





***Comparison of the eyebrow of MORGAN from officer BWC at the convenience store(top) to MORGAN's previous booking photograph (bottom)***

21.     On August 13, 2025, two of the MPD officers who were present at the time the firearm was recovered on July 12, 2025, observed who they believed to be MORGAN in the area of 2238 Town Center Drive Southeast, Washington, D.C. Officers stopped and identified MORGAN, who identified himself by word of mouth as Tony Morgan. Officers observed and photographed MORGAN's distinguishing tattoos.

11



*MORGAN during the stop on August 13, 2025*

22.     On November 6, 2025, the Honorable Milton C. Lee issued a D.C. Superior Court arrest warrant for MORGAN. On December 28, 2025, MORGAN was arrested pursuant to the warrant and has been charged by Complaint in D.C. Superior Court case number 2025 CF2 017809 with Carrying a Pistol without a License Outside Home or Place of Business, in violation of D.C. Code § 22-4504 (a)(1).

23.     On or about November 13, 2025, swabs of the firearm and magazine recovered on July 12, 2025, were submitted for DNA testing to the Forensic Laboratory of Signature Science, LLC.

Firearm Possession on December 28, 2025

24.     At approximately 8:40 p.m. on December 28, 2025, at the intersection of Martin Luther King Jr Avenue Southeast and South Capitol Street Southeast, MPD Officer Moreno and Officer Barilla initiated a traffic stop of a dark-colored Jeep Grand Cherokee bearing Virginia hard

tag TFK7606 because law enforcement databases showed that the vehicle was reported stolen. A black female, later identified as SIMMONS, was observed in the driver seat of the vehicle and a black male, later identified as MORGAN, was observed in the front passenger seat. There were no other occupants of the vehicle.

25.    MPD officers believed that SIMMONS attempted to drive away after they had initiated the stop. SIMMONS and MORGAN were both ordered out of the vehicle.



*MORGAN exiting the vehicle during the traffic stop*

26.    During a search of the vehicle, MPD officers discovered a firearm on the ground directly under the front passenger side of the vehicle.

13



*The location where the firearm was discovered*

27.     The firearm was a black Glock 19 Gen 5 handgun bearing serial number BSKR593 with a fifteen round capacity magazine loaded with 15 rounds of ammunition and one round of ammunition in the chamber. The firearm appeared to be fully functional, able to be fired with one hand, had a barrel length less than 12 inches, and capable of expelling a projectile by means of explosion.

28.     A subsequent review of MPD Officer Barilla's BWC footage revealed that an audible metallic clank can be heard as MORGAN stepped out of the vehicle. According to MPD officers, no one else was near the passenger side at the time other than MORGAN nor did anyone else go to the surrounding area other than law enforcement officers.

29.     A query through D.C.'s database for pistol permits revealed that MORGAN did not have a license to carry a firearm in the District of Columbia.

14

30.   MORGAN and SIMMONS were both arrested. MORGAN was charged by Complaint in D.C. Superior Court case number 2025 CF2 017808 with Carrying a Pistol without a License Outside Home or Place of Business, in violation of D.C. Code § 22-4504 (a)(1), and Unlawful Possession of a Firearm (Prior Conviction), in violation of D.C. Code § 22-4503(a)(1). SIMMONS has been charged by Complaint in D.C. Superior Court case number 2025 CF2 017807 with Unauthorized Use of a Vehicle, in violation of D.C. Code § 22-3215(b). Both cases related to the offense on December 28, 2025 (2025 CF2 017807 and 2025 CF2 017808) were dismissed on February 19, 2026.

31.   On April 24, 2026, the U.S. Army Criminal Investigation Laboratory published a DNA report analyzing a comparison of DNA for the firearm recovered on December 28, 2025 against DNA swabs from MORGAN and SIMMONS. The Report indicated that the DNA profile found on the firearm recovered on December 28, 2025, was from four individuals.  The DNA profile from the firearm is 1.0 quintillion times more likely if it originated from Ronae Simmons and three unknown individuals than from four unknown individuals. The DNA profile from the firearm is 15 trillion times more likely if it originated from the Defendant and three unknown individuals than four unknown individuals.

32.   The DNA profile from the magazine from the firearm recovered on December 28, 2025, was from four individuals. It was at least 1.0 quintillion more likely if it originated from the Defendant and three unknown individuals than from four unknown individuals.

33.   On May 29, 2026. 2026, a federal grand jury returned an indictment charging MORGAN with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) for possession of the firearm on December 28, 2026.

15

34.     Your affiant knows MORGAN to have a prior conviction punishable by a term of more than one year, that is, he has previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in Circuit Court for Prince Georges County, Maryland, Case Number CT110757X on October 14, 2011, and was sentenced to a term of imprisonment of more than one year in that case.

35.     Your affiant knows that there are no firearm or ammunition manufacturers in the District of Columbia and therefore, the firearms and ammunition in this case would have traveled in interstate commerce.

36.     Law enforcement previously obtained three warrants in D.C. Superior Court for a buccal swab to obtain the DNA profile of MORGAN during the above investigations. The first two warrants expired before they could be executed. On February 11, 2026, the third warrant was executed. That buccal swab from MORGAN was submitted to the U.S. Army Criminal Investigation Laboratory for comparison to the firearm recovered on December 28, 2025. It was not until receiving the results of U.S. Army Criminal Investigation Laboratory DNA Report that investigators realized that the DNA profile by U.S. Army Criminal Investigation Laboratory could not be used for comparison to the DNA profile developed by the Forensic Laboratory of Signature Science, LLC, for the swabs from the firearm and magazine recovered on July 12, 2025. Therefore, an additional buccal swab of MORGAN is required for submission to Signature Science, LLC, to develop a DNA profile that can be compared against the DNA profiles from the swabs from the firearm and magazine recovered on July 12, 2025.

37.     There is probable cause to search MORGAN for a saliva sample containing his DNA because there is a fair probability that his DNA is relevant evidence of a crime, specifically

16

because comparison to DNA samples from the firearm and magazine recovered on July 12, 2025, are likely to make it more or less probable that MORGAN possessed the firearms in question.

38.     Based on the foregoing facts, your affiant believes there is probable cause to believe that the firearms described above were possessed by MORGAN. The affiant therefore believes there is probable cause to obtain a buccal swab from MORGAN, to compare the DNA collected from the firearm and magazine recovered on July 12, 2025, to MORGAN's DNA.

39.     MORGAN was arrested on June 2, 2026, and will be taken to United States District Court for the District of Columbia for an initial appearance in 26-cr-122 in the coming days.

**CONCLUSION**

40.     Based upon the above-referenced facts, your affiant submits that there is probable cause to believe that evidence of the SUBJECT OFFENSE will be located in the cheek/saliva (buccal swab) of MORGAN.

Respectfully submitted,

NAJLA MUHAMMAD
Special Agent
ATF

Subscribed and sworn by phone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on June 4, 2026



G. Michael Harvey
United States Magistrate Judge

17